## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CA NO.: **4-10439RCL**

DONNA MANCHESTER and NOEMIA CAMARA
Individually, and on behalf of all others similarly situated

        Plaintiffs

VS.

MAIN STREET TEXTILES, L.P., and
JOAN FABRICS SERVICES L.L.C. and
JOAN FABRICS CORPORATION

        Defendants

### MOTION TO AMEND CLASS ACTION COMPLAINT

Now comes the plaintiffs in the above captioned matter and move this Honorable Court to allow them to amend their Complaint by adding a Count under M.G.L. chapter 149, §150 and chapter 151, §§1B and 20 which establishes a private right of action for employee who have been victims of the violation of the state wage laws, which allows for injunctive relief, treble damages for any loss wages or other benefits including loss of vacation pay.

Plaintiffs further requests that this Court allow them to amend their complaint by clarifying the allegations contained therein.

By their Attorneys,
BRIAN CUNHA & ASSOCIATES

_____
Brian R. Cunha, Esq., BBO #108560
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DONNA MANCHESTER and NOEMIA CAMARA: Individually, and on behalf of all others similarly situated<br><br>　　　　　　　　Plaintiffs<br><br>VS.<br><br>MAIN STREET TEXTILES, L.P., and<br>JOAN FABRICS SERVICES L.L.C. and<br>JOAN FABRICS CORPORATION<br><br>　　　　　　　　Defendants | CA NO.: **4-10439RCL** |

**AMENDED CLASS ACTION COMPLAINT**

**PARTIES**

1. Plaintiffs, **DONNA MANCHESTER and NOEMIA CAMARA**, Individually and on behalf of all others similarly situated, (hereinafter referred to collectively as "Plaintiffs") by their attorneys, Brian Cunha &Associates, P.C., for their complaint against Main Street Textiles, L.P., Joan Fabrics Services L.L.C., and Joan Fabrics Corporation, Defendants, allege under Rule 23 of the Federal Rules of Civil Procedure and such other applicable laws and statutes as follows for violation of the Worker Adjustment and Retraining Act (hereinafter referred to as the "Warn Act") & M.G.L.A. c. 149 § 148.

2. This is an action brought by former employees of Main Street Textiles, L.P., (hereinafter referred to as "Main Street") formerly located at Commerce Drive, Fall

1

River, Massachusetts, a wholly owned subsidiary of Tyng Textile Group, L.L.C., located at 100 Vesper Executive Park, Tyngsboro, Massachusetts, who were permanently laid-off in a series of layoffs commencing on August 26, 2003 through November 4, 2003, against their prior employer "Main Street," for violation of the Worker Adjustment and Retraining Notification Act (hereinafter referred to as "Warn Act") 29 U.S. C. § 2101 et. seq.

3. That "Main Street" was organized under the laws of the State of Delaware and registered to do business in the Commonwealth of Massachusetts on July 7, 1994.

4. That "Main Street" was a business enterprise that employed more than 100 employees at its manufacturing plant located at 82 Commerce Drive, Fall River, Massachusetts.

5. That the name and address of the resident agent for service for "Main Street" is Joan Fabrics Corporation, located at 100 Vesper Executive Park, Tyngsboro, Massachusetts.

6. That Joan Fabrics Services, L.L.C., ("JFS"), is a Foreign Limited Liability Company, with a principal business office located at 100 Vesper Executive Park, Tyngsboro, Massachusetts.

7. That "JFS" is organized under the laws of the State of Delaware and registered to do business in the Commonwealth of Massachusetts on January 8, 2003.

8. That the general character of "JFS" is to engage in the business of administrative services, and to carry on any related or unrelated lawful business, trade, purpose or activity.

9. That the name and address of the resident agent for service for "JFS" is Joan

Fabrics Corporation, located at 100 Vesper Executive Park, Tyngsboro, Massachusetts.

10. The Plaintiffs, Donna Manchester and Noemia Camara are former employees of the Defendant who have brought this action on behalf of themselves and all similarly situated employees laid off pursuant to a "mass lay-off" as defined by the "WARN ACT" and who have failed to receive adequate notice or compensation as required under the statute.

11. All Plaintiffs in this class action also include employees that were separated from their employment from the Defendant "Main Street." from August 2003 through December 2003 and "were not" paid vacation pay as required under **M.G.L.c. 149 § 148, *Payments of Wages and Commissions.***

## CLAIMS

12. Under the "WARN ACT" as "affected employees" within the meaning of the statute, they were entitled to sixty (60) day advance written notice of lay-off, which they were not given, and "Main Street" is wholly liable for sixty (60) days back pay under the terms of the statute 29 U.S.C. § 2104 (a) (1) (A).

13. All employees that were laid off during the time frame, August 25, 2003 through December 31, 2003 also claim that under M.G.L.A. c.149 S. 148 that they accrued and are owed vacation pay for that time period that they were employed prior to their lay-off.

## JURISDICTION AND VENUE

14. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-

alleges each and every paragraph 1-13 of the Plaintiff's Complaint as if fully stated herein.

15. This Court has jurisdiction over the Defendants because Defendants are registered with the Massachusetts Secretary of State, do sufficient business in Massachusetts and have minimum contacts with it, or otherwise intentionally avail themselves of the Commonwealth of Massachusetts through the sale, manufacture, distribution, and/or processing of fabrics and/or textile products in Massachusetts to render the exercise of jurisdiction over Defendants by this Court consistent with traditional notions of fair play and justice.

16. That for claims presented under the "WARN ACT", or Federal law, Venue and Jurisdiction are proper in this court for as conferred by the Act under Title 29 U.S.C. § 2104 (5), which states that "a person seeking to enforce such liability, including a representative of employees aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business."

17. That for claims presented under State Law, this court, in its discretion, under the principle of Pendent Jurisdiction, may extend its Jurisdiction over a related state law claim where both state and federal claims arise from a common nucleus of operative facts.

18. That Venue in this Court is proper under Massachusetts General Laws as the Plaintiffs in this class action reside in the Commonwealth of Massachusetts and in the County of Bristol.

## NATURE OF THE CASE

19. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbers 1-18 of the Plaintiff's Complaint as if fully stated herein.

20. Plaintiffs bring this case as a class action for damages arising from the Defendant's failure to comply with the Worker Adjustment and Retraining Notification Act, [29 U.S.C. §2101-2109 and /or 20 C.F.R. § 639.1-639.10], (hereinafter referred to as "**WARN ACT**") enacted on August 4, 1988 and made effective on February 4, 1989 and M.G.L.c. 149 § 148, Payment of Wages; for failure to pay vacation wages.

### Worker Adjustment and Retraining Notification Act

### ["WARN" ACT]

21. The **"WARN" Act** requires that employers give employees 60 calendar days advance written notice of any plant closing or mass lay which will result in an employment loss at the employment site if they make up at least 33% or one-third of the employers active workforce, or if the shutdown will result in an employment loss for 50 or more employees during any 30 day period.

22. In order for an employer to decide whether notice is required, the employer is required to look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate, for any 30 day period, reach the 1/3 requirement or 50 employees to be laid off and thus trigger the notice requirement.

23. An employer is also required to look ahead 90 days and behind 90 days to

determine whether a series of lay offs or employment actions both taken and planned, each of which separately is not of sufficient size to reach the 1/3 required or 50 persons laid off, in the aggregate, for any 90-day period, reach the 1/3 or 50 persons minimum numbers for a plant closing or a mass lay off and thus trigger the notice requirement.

24. Under Title 20 C.F.R., § 639.5, when all employees are not terminated on the same date, the date of the first individual termination within the statutory 30 day or 90 day period triggers the 60 day notice requirement. A worker's last day of employment is considered the date of that worker's layoff. The first and each subsequent group of terminees are entitled to a full 60 days' notice.

## COUNT I

### Reparations and Liability "WARN ACT"

25. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbers 1-24 of the Plaintiff's Complaint as if fully stated herein.

26. Aggrieved employees may seek reparations under the "WARN ACT" if an employer orders a plant closing or mass layoff in violation of 29 U.S.C. §2102, the Worker Adjustment and Retraining Notification Act.

27. An employer under the "WARN ACT" shall be liable to each aggrieved employee who suffers employment loss as a result of such closing or lay off for back pay for each day of violation at a rate of compensation not less than the higher of the average regular rate received by such employee during the last three years of the employee's employment; or the final regular rate received by such employee; and

benefits under an employee benefit plan, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

## BACKGROUND

28. The Defendant "Main Street", was incorporated in 1994 at the location of the former Joan Fabrics Corporation in Fall River, Massachusetts, and operated an extensive manufacturing business in textiles for furniture fabrics, employing in excess of three hundred (300) employees.

29. After September 11, 2001, "Main Street" and the textile industry began to experience declining sales and profits primarily due to the U.S. economy and overseas competition, particularly from Mexico and China, whose very low cost imports prevented "Main Street" from increasing its prices to customers as it was incurring higher production costs.

30. The "Main Street" factory in Fall River was not productive. The economic and productivity problems at the plant became progressively grim in 1991 due to the loss of business volume and low sales.

31. In 2002 things got worse and in 2003 very bad. Its revenues declined substantially between 2001 and 2003.

32. The business down-turn became very significant by April of 2003. Initially management sought to address the problems by shift reductions and lay-offs.

33. For the first time in ten (10) years the company was forced to abandon around-the-clock, seven day operations at Fall River. The Company cut back from a four (4) shift, seven (7) day production schedule to a three (3) shift, five (5) day schedule.

34. In July or August of 2003, there were several meetings between Wade Martin, the Vice President of Operations, Ed DiPetrillo, Vice President of Human Resources for Joan Fabrics, Lou Ann Laponte, Human Resource Manager for Main Street Textiles, and Lincoln Almond, their attorney from Edwards and Angell, discussing the issues that triggered the "WARN ACT" and the amount and the percentages that would have to be paid to "Main Street" employees in the event of a "mass layoff".

35. In response to the worsening financial decline, the Defendant began a series of "mass layoffs" that commenced on August 26, 2003 and concluded with the closing of the plant on April 30, 2004.

36. During a 90 day period spanning August 26, 2003, through November 26, 2003 the Defendant, who as of August 25, 2003 had 356 employees, laid-off, in a staggered series of layoffs, more than 50 employees and more than thirty-three percent of their full-time employees at the "Main Street" site, including the plaintiff's, which would, under 20 U.S.C. s. 2102 (d), trigger the WARN notice requirements under the statute.

37. Pursuant to its notice dated October 17, 2003, the Defendant compensated only the employees laid off during the 60 day time period between November 6, 2003 and December 5, 2003, claiming that under WARN these were the only employees entitled to notice or eligible for compensation.

38. The Defendant in violation of the WARN ACT, failed to compensate the following thirty-one plaintiffs, who were laid-off between August 26, 2003 and October 24, 2003, for whom this claim is now made:

    1.    Donald La Frenier    August 26, 2003

| | | |
|---|---|---|
| 2. | Lorraine Craven | August 29, 2003 |
| 3. | Alberto Cortez, | September 5, 2003 |
| 4. | John Duarte, | September 5, 2003 |
| 5. | James Lowder, | September 5, 2003 |
| 6. | Richard Gibney, | September 15, 2003 |
| 7. | Margarida Rego, | September 16, 2003 |
| 8. | Luis Clara, | September 22, 2003 |
| 9. | Jose Pereira, | September 22, 2003 |
| 10. | Jose Pimental, | September 22, 2003 |
| 11. | Helen Texiera, | September 22, 2003 |
| 12. | Maria Fernandez, | September 22, 2003 |
| 13. | Guilherme Cabral, | September 22, 2003 |
| 14. | Vath Chhem, | September 26, 2003 |
| 15. | Augustine Apente, | September 26, 2003 |
| 16. | Alaro Damaso, | September 26, 2003 |
| 17. | Antonio Geruasio, | September 26, 2003 |
| 18. | Francisco Gomes, | September 26, 2003 |
| 19. | Guilherme Goncalves, | September 26, 2003 |
| 20. | Dolores Oliveira, | September 26, 2003 |
| 21. | Noemia Camara, | September 28, 2003 |
| 22. | Ben Hellman, | September 29, 2003 |
| 23. | Manuel Resendes, | September 29, 2003 |
| 24. | Maria D. Melo, | September 30, 2003 |
| 25. | Joshua Faria, | October 1, 2003 |
| 26. | Miguel Calheta | October 1, 2003 |
| 27. | Ken Leveque, | October 1, 2003 |
| 28. | Donna Manchester, | October 3, 2003 |
| 29. | Mario Ventura, | October 6, 2003 |
| 30. | Augustine Roderigues, | October 10, 2003 |
| 31. | John Freitas, | October 17, 2003 |

## **FAILURE TO PAY VACATION PAY**

## **COUNT II**

### **Reparations and Liability M.G.L. Ch 149, §148**

39. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbers 1-38 of the Plaintiff's Complaint as if fully stated herein.

40. None of the Plaintiff employees in this class action that were laid off by "Main Street" received vacation pay when laid off. "Main Street" gave their full time employees two weeks paid vacation every year.

41. Under State law, employers who choose to provide paid vacation to their employees must treat those payments like any other wages under M.G.L. Ch. 149, § 148. See *Massachusetts v. Morash,* 490 U.S. 107 (1989).

42. Like wages, the vacation time promised to an employee is compensation for services which vests as the employees services are rendered. Upon separation from employment, employees must be compensated by their employers for vacation time earned "under an oral or written agreement." M.G.L. Ch.149, §148. Withholding vacation payments is the equivalent of withholding wages and, as such, is illegal.

43. The plaintiffs' class of affected employees regarding the failure to pay vacation pay consisted of all those employees laid off commencing on August 26, 2003 through December 25, 2003.

44. The Commonwealth's Payment of Wages Law, G.L. c. 149, § 148, mandates that upon their termination, employees are paid for their earned wages within six days of the pay period in which the wages are earned. This statute defines "wages" as "includ[ing] any holiday or vacation payments due an employee under an oral or written agreement." G.L.c. 149, §148 (1996 ed. & 2001 Supp.). The defendant has failed to make such payouts to the above class of persons.

## COUNT III

## CLASS ACTION ALLEGATIONS

10

45. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbered 1-45 of the Plaintiffs' Complaint as if fully stated herein.

46. Plaintiffs bring this action as a class action pursuant to Rule 23 (a) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of the proposed Plaintiffs' class.

47. Specifically excluded from the proposed class are: (a) all claims for personal injury by Plaintiffs; (b) commercial entities; (c) government entities; (d) Defendants herein, and any entity in which any Defendant has a controlling interest, and the employees, affiliates, legal representatives, heirs, successors, or assignees of Defendants; (e) counsel for Defendants and all firm members, associates, employees and their immediate families; (f) counsel for Plaintiffs and all firm members, associates, employees and their immediate families; and (g) any presiding judge and members of their immediate families.

48. This action may be properly maintained as a class action and satisfies the numerosity, commonality, typicality and adequacy requirements under Rule 23 (a) of the Federal Rules of Civil Procedure.

49. The Plaintiff's class is so numerous that the individual joinder of all members is impracticable under the standards of Rule 23 (a) of the Federal Rules of Civil Procedure. While the exact number of class members is unknown to Plaintiffs at this time, it is estimated that as to the vacation pay claim there are hundreds of class members. Class membership is objectively ascertainable by existing records and appropriate discovery.

50. Common questions of law and fact arising from the Defendants', illegal conduct exist as to all members of the class, as required by Rule 23 (a) (2) of the Federal Rules of Civil Procedure. These common questions predominate over any question which may affect individual members of the class. These common questions include, without limitation:

    a. Did the Employer violate the WARN Act by failing to give the appropriate notice as required by the WARN Act?

    b. Did the Employer violate the WARN Act by laying off employees prior to the expiration of the 60 day notice period without pay?

    c. If, the employer did violate the WARN Act, what if any benefits are due to the aggrieved employees?

    d. Did the Employer violate state law by failing to pay the employees their vacation pay upon separation from employment?

51. Plaintiff's claims are typical of the claims of the members of the class under Rule 23 (a) of the Federal Rules of Civil Procedure, since Plaintiff sustained damages arising out of being laid off prior to the 60 day notice period by the Defendant, Main Street Textiles's, common course of conduct in violation of federal law as complained of herein.

52. Plaintiff will fairly and adequately represent the interests of the members of the class as required by Rule 23 (a) of the Federal Rules of Civil Procedure. Plaintiffs claims are typical of claims of the Plaintiff's Class and he has no interest that are adverse to the interests of the class members. Plaintiff has retained competent legal counsel

experienced in litigation of class action and civil litigation.

53. This action may be maintained under Rule 23 of the Federal Rules of Civil Procedure because common questions of law and fact predominate over individual questions. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since the members of the Plaintiffs' Class are so numerous that individual joinder of each is impracticable. Furthermore, if separate actions were brought or be required to be brought, the resulting multiplicity of lawsuits would cause substantial and undue expense to the court system. Individualized litigation would also magnify the delay and expense to all parties and the judicial system. In contrast, litigating this matter as a class action presents far fewer management difficulties and conserves the resources of the parties and the court system. Representation by Plaintiff and their attorneys with the court's oversight, also protects and advances the interests and rights of each class member.

54. This action can also be certified under Rule 23 of the Federal Rules of Civil Procedure because:

   a. The prosecution of separate actions by individual members of the Plaintiffs Class would create a risk of inconsistent or varying adjudications with respect to the individual class members which would establish incompatible standards of conduct for Defendant, Main Street Textiles; and

   b. The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would,

13

as a practical matter, be dispositive of the interests of the other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## COUNT IV

### DONNA MANCHESTER
### And others similarly situated

55. The Plaintiff, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbered 1-54 of the Plaintiff's Complaint as if fully stated herein.

56. That the Individual and Representative Plaintiff, DONNA MANCEHSTER, is a citizen of the State of Massachusetts, and currently resides at 700 Second Street, Fall River, Massachusetts, 02721.

57. That the Plaintiff, Donna Manchester was laid off from the Defendant Corporation, Joan Fabrics et al. on or about October 3, 2003.

58. That on October 17, 2003, subsequent to her layoff, the Plaintiff received notification of the mass "layoff" allegedly pursuant to the "WARN ACT."

59. That on or about October 17, 2003 and on diverse dates thereafter, many employees were laid off prior to the expiration of the 60 day notice period and were not paid wages for the remainder of the 60 day period.

60. That on or about August 25, 2003 and on diverse dates thereafter, the employees that were laid off, were also not paid vacation pay as required under state law.

61. That under the "WARN ACT" the employees that were laid off prior to the expiration of the 60 day notice period were entitled to receive wages and other benefits, such

14

as vacation pay, medical benefits and other fringe benefits during that notice period.

62. That as a result of the Defendant "Main Street " actions in ordering a mass lay off and not paying the employees for the remainder of the 60 day notice period, the Defendants were in violation of the "WARN ACT".

63. That as a result of the Defendant "Main Street's" violation of the "WARN ACT", the plaintiff employees were denied benefits, such as wages, vacation pay, medical benefits and other fringe benefits.

64. That DONNA MANCHESTER, as a Representative of the class was an employee of "Main Street" was not paid wages or vacation pay after being laid off on or about October 3, 2003.

65. That Plaintiffs in this class action are citizens of the State of Massachusetts.

## COUNT V

66. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbers 1-65 of the Plaintiffs' Complaint as if fully stated herein.

67. That the Individual and Representative Plaintiff, NOEMIA CAMARA, is a citizen of the State of Massachusetts, and currently resides at 82 Wellington Street, Fall River, Massachusetts.

68. That the Plaintiff, Noemia Camara was laid off from the Defendant Corporation, "Main Street" on or about September 26, 2003.

69. That on or about October 17, 2003, the defendant "Main Street" gave notice under the "WARN ACT" to all its employees that there was going to be a mass lay off.

70. That on or about October 17, 2003 and on diverse dates thereafter and before,

15

many employees were laid off prior to the expiration of the 60 day notice period and were not paid wages for the remainder of the 60 day period.

71. That on or about August 25, 2003 and on diverse dates thereafter, the employees that were laid off prior to the expiration of the 60 day notice period, were also not paid vacation pay as required under state law.

72. That under the "WARN ACT" the employees that were laid off prior to the expiration of the 60 day notice period were entitled to receive wages and other benefits, such as vacation pay, medical benefits and other fringe benefits during that notice period.

73. That as a result of the Defendant "Main Street " actions in ordering a mass lay off and not paying the employees for the remainder of the 60 day notice period, the Defendants were in violation of the "WARN ACT".

74. That Noemia Camara as a Representative of the class was an employee of "Main Street " was not given appropriate notice under the "WARN ACT" nor paid wages or vacation pay after being laid off on or about September 26, 2003.

## COUNT VI

### (State Claim)

75. The Plaintiff, Individually, and on behalf of all others similarly situated, hereby re-alleges each and every paragraph numbered 1-74 of the Plaintiffs' Complaint as if fully stated herein.

76. That all employees laid off from August 2003 through December 2003 were not paid vacation pay or their pro rata share of earned vacation pay as required under state law.

77. That as a result of the Defendant "Main Street" failure to comply with state law the

plaintiff employees were denied benefits earned.

78. That M.G.L. Ch. 149 §150 and Ch. 151 §§1B and 20 establishes a private right of action for employees who believe they are victims of certain violations of the state wage laws. Permission has been granted by the Attorney General's Office to pursue said private right of action.

79. The Plaintiffs, Individually, and on behalf of all others similarly situated, hereby re-allege each and every paragraph numbered 1-81 of the Plaintiff's Complaint as if fully stated herein.

80. As a result of being laid off for the time period between August 25, 2003 and December 25, 2003, without advance notice and without pay, Plaintiffs have suffered damages including, but not limited to, lost wages, medical benefits, vacation pay, other economic damages, along with costs associated with obtaining counsel.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs demand judgment in their favor against Defendants as follows:

   a. A declaration by the court that Defendants, Main Street Textiles et al. have been and continue to be in violation of the above legal duties;

   b. Awarding Plaintiffs compensatory damages, back pay, including benefits and vacation pay as allowed by the WARN ACT;

   c. Awarding Plaintiffs compensatory damages, back pay, including benefits and vacation pay as allowed by State Law;

   d. Awarding Plaintiffs the costs of this lawsuit, including, but not

limited to, attorneys' fees and costs as authorized by statute and the applicable rules of this court;

e. An Order mandating that Defendants and its successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded;

f. Awarding Plaintiffs such other, further, and different relief as the court may deem appropriate and just; and

g. Trial by jury.

                    **Plaintiffs, Individually, and
on behalf of all others similarly situated,**
By their Attorneys,
**BRIAN CUNHA & ASSOCIATES, P.C.**

_____
Brian R. Cunha, Esquire
311 Pine Street
Fall River, MA 02720
Telephone: (508) 675-9500
Fax: (508) 679-6360

DATED: July 27, 2006