## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA MANCHESTER and NOEMIA CAMARA Individually, and on behalf of all others similarly situated<br>　　　　　　　　　Plaintiffs<br><br>VS.<br><br>MAIN STREET TEXTILES, L.P.,　　and<br>JOAN FABRICS SERVICES L.L.C.　and<br>JOAN FABRICS CORPORATION<br><br>　　　　　　　　　Defendant | CA NO.: 04-10439-RGS |

### PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

Pursuant to Local Rule 56.1, the plaintiffs submit this Statement of Uncontroverted Facts.

### STATEMENT OF UNDISPUTED FACTS

1.　　Main Street was formed in 1996 as part of the Tyng Textiles Group, a subsidiary of Joan Fabrics Corporation. See Deposition of Penny Richards ("Richards Dep.") at 6:14-17, 8:8-9:12.[1] Until it closed in April, 2004, Main Street operated a weaving plant in Fall River, Massachusetts, that produced and supplied decorative fabrics for the home furnishing and contract industries.

2.　　Main Street's Fall River facility experienced a decline in productivity after the events of September 11, 2001 as a result of a downturn in the United States economy generally, and in the home furnishings market in particular. See Defendant Main Street Textiles, L.P.'s Response to Plaintiffs' Interrogatories; Deposition of Edward DiPetrillo ("DiPetrillo Dep.") at 33:19-34:15, 40:12-41:1; Ex. 1 at 18:12-20. These productivity problems

---

[1] The relevant excerpts from the Richards Dep. See Defendants' Exhibit 1.

became more acute in the Spring of 2003, and progressed through the Summer of 2003, forcing Main Street to reorganize its workforce and lay off employees. (See Defendants' Ex. 2 at Ex. B; Ex. 3 at 43:9-44:8; Ex. 1 at 18:18-20.)

3. The Plaintiffs were included among the employees Main Street laid off because of then existing market conditions. See Layoff Policy, as Defendants' Exhibit 9. Specifically, Main Street laid off Ms. Camara on September 28, 2003 and Ms. Manchester on October 3, 2003. (See Defendants' Ex. 2 at Ex. B.)

4. It became apparent to management in the summer of 2003 that Main Street's Fall River Facility would have to close. (See Defendants' Ex. 1) and met with the Company's attorneys to discuss the plant closing and to discuss the WARN Act and the requirements thereunder. (Depo Trans Wade Martin page 20-24 Ex 7 and Depo Lou Ann Laporte page 47-63 Ex 7.)

5. In response to the worsening in the financial decline the defendants began a series of mass layoffs that commenced on August 26, 2003 and conclude with the closing of the plant on April 30, 2004. (See Plaintiffs' Ex. 4.)

6. During a 90 day period spanning August 26, 2003, through November 26, 2003 the Defendant, who as of August 25, 2003 had 356 employees,[2] (see Plaintiffs' Ex. 4) laid-off, in a staggered series of layoffs, more than 50 employees and more than thirty-three percent of their full-time employees at the "Main Street" site, including the plaintiff's, which would, under 20 U.S.C. §2102(d), trigger the WARN notice requirements under the statute.

7. The Defendant failed to compensate the thirty-one plaintiffs, however, who were

---

[2]The records supplied by the Defendant document that as of August 30, 2003 "Main Street"employed three hundred and fifty-eight (356) full time employees. The records also document that from August 25 through August 30 two (2) employees were laid off resulting in the calculation that on the "snapshot" date the defendant employed (358) employees.

laid-off between August 26, 2003 and October 24, 2003[3].

8. By letter dated October 17, 2003 (the "WARN Notice"), Main Street notified its active employees (and inadvertently some former employee who were recently laid off) that it intended to permanently close its Fall River plant by April 30, 2004. Specifically, the WARN Notice proved as follows:

> The Company regrets to inform you that Main Street Textiles has made the decision to permanently discontinue its manufacturing operations in Fall River. As a result, the Company expects the plant to close permanently by April 30, 2004. The first separations are expected to occur on or about October 17, 2003. Employees will be laid off at various times subject to the availability of work.

---

[3] The employees and date of lay-off, for whom claim is made is as follows:

| # | Name | Date |
|---|---|---|
| 1. | Donald La Frenier | August 26, 2003 |
| 2. | Lorraine Craven | August 29, 2003 |
| 3. | Alberto Cortez, | September 5, 2003 |
| 4. | John Duarte, | September 5, 2003 |
| 5 | James Lowder, | September 5, 2003 |
| 6. | Richard Gibney, | September 15, 2003 |
| 7. | Margarida Rego, | September 16, 2003 |
| 8. | Luis Clara, | September 22, 2003 |
| 9. | Jose Pereira, | September 22, 2003 |
| 10. | Jose Pimental, | September 22, 2003 |
| 11. | Helen Texiera, | September 22, 2003 |
| 12. | Maria Fernandez, | September 22, 2003 |
| 13. | Guilherme Cabral, | September 22, 2003 |
| 14. | Vath Chhem, | September 26, 2003 |
| 15. | Augustine Apente, | September 26, 2003 |
| 16. | Alaro Damaso, | September 26, 2003 |
| 17. | Antonio Geruasio, | September 26, 2003 |
| 18. | Francisco Gomes, | September 26, 2003 |
| 19. | Guilherme Goncalves, | September 26, 2003 |
| 20. | Dolores Oliveira, | September 26, 2003 |
| 21. | Noemia Camara, | September 28, 2003 |
| 22. | Ben Hellman, | September 29, 2003 |
| 23. | Manuel Resendes, | September 29, 2003 |
| 24. | Maria D. Melo, | September 30, 2003 |
| 25. | Joshua Faria, | October 1, 2003 |
| 26. | Miguel Calheta | October 1, 2003 |
| 27. | Ken Leveque, | October 1, 2003 |
| 28. | Donna Manchester, | October 3, 2003 |
| 29. | Mario Ventura, | October 6, 2003 |
| 30. | Augustine Roderigues, | October 10, 2003 |
| 31. | John Freitas, | October 17, 2003 |

>Unfortunately, the Company does not know the exact dates that individual employees will be laid off and would like to delay lay offs as long as possible depending on the availability of work. If you are laid off prior to the expiration of the 60 day WARN Act notice period, the Company will continue your pay and benefits for the ful 60 day notice period.

WARN Notice. (See Plaintiffs' Ex. 3.)

9. Pursuant to its notice the Defendant compensated only the employees laid off during the 60 day time period between November 6,2003 and December 5,2003, claiming that under WARN these were the only employees entitled to notice or eligible for compensation.

10. On October 17, 2003, Main Street also provided notice of its anticipated plant closing to the May of Fall River, Edward M. Lambert, Jr., see letter to Mayor Lambert. See Defendants' Ex. 8, and to Jonathan Raymond of the Commonwealth Corporation, the entity designated by the Commonwealth as the state dislocated worker unit. See Letter to Jonathan Raymond. See Defendants' Exhibit 9.

11. From August 25 through September 23, 2003, the Defendant laid off 13 employees. (See Plaintiffs' Ex. 4.)

12. From September 24, through October 23, 2003, the Defendant laid off 18 employees. (See Plaintiffs' Ex 4.)

13. From October 24, through November 22, 2003, the Defendant laid off 107 employees. (See Plaintiffs' Ex. 4 and Ex. 5.)

14. In aggregate, the total layoffs (136) were sufficient to meet threshold requirement to meet the definition of mass layoff.

15. The Plaintiffs were included among the layoffs that took place between August 25, 2003 and November 22, 2003.

16. Additional layoffs followed those of August November and December 2003. See Ex. 2 at Ex. C. Main Street permanently closed the Fall River plant on April 30, 2004. See id.;

Ex. 3 at 42:16-19.

17. Between July 17, 2003 and October 17, 2003, Main Street initially laid off a total of 53 employees, of whom 15 were recalled and continued to work beyond October 17, 2003. See Ex. 2 at Ex. B, Ex. C.

18. Main Street historically shut down its manufacturing facility for one week in July and one week in December each year. See Defendant Main Street Textiles, L.P.'s Supplemental Response to Plaintiffs' Interrogatories, See Defendants' Ex. 10.

19. Production Hourly Associates were eligible for vacation pay during those work stoppages, referred to as "vacation pay" under the Company's policy. See Plaintiffs' Ex 6.

20. Pursuant to the express terms of the written policy, vacation payment accrued based upon years of service and prior earnings for the past six months. See Plaintiffs' Ex. 6.

21. That the Attorney General has issued an Advisory on the accrued vacation time. See Plaintiffs' Ex. 9.

22. Main Street's computation of an employee's actual pay during these work stoppages based upon the employee's seniority and total earnings for the preceding six months, (see Plaintiffs' Ex. 6), amounted to an accrual policy and failure to pay the vacation pay is a violation of Chapter 149 §148.

23. An employee with up to three years of service as of the date of the work stoppage would be entitled to "vacation pay" during the work stoppage in an amount equal to 2% of his or her total earnings for the preceding six months. (See Plaintiffs' Ex. 6.)

24. An employee with greater than three years, but less than five years, of service as of the date of the work stoppage would be entitled to "vacation pay" during the work stoppage in an amount equal to 3% of his or her total earnings for the preceding six months. See id.

25. The vacation policies for Office Hourly and Salaried Associates specifically state

that "[v]acation time accrues from July 1, - June 30th of each fiscal year" and provide a schedule over which "full-time Salaried Associates['] [and Office Hourly Associates'] vacation time will accrue." See Salaried Vacation Policy of Defendants' Ex. 12; and Office Hourly Associate Vacation Policy, as Plaintiffs' Ex. 6.

26. The Plaintiffs have filed a complaint with the Attorney General's Office against Main Street based on their purported Wage Act claims. See Plaintiffs' Ex. 10.

27. The Plaintiffs amended their Complaint in August 2006 adding their claim under Chapter 149 §148.

<div style="margin-left: 40%;">

Plaintiffs
By their Attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

/s/ Brian R. Cunha
Brian R. Cunha, Esq. (BBO #38737)
311 Pine Street
Fall River, MA 02720
(508) 675-9500

</div>

Dated: September 15, 2006

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that all counsel of record are so registered.

Dated: September 15, 2006

/s/ Brian R. Cunha
Brian R. Cunha, Esq.