UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA MANCHESTER and NOEMIA CAMARA, Individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>VS.<br><br>MAIN STREET TEXTILES, L.P., JOAN FABRICS SERVICES, LLC and JOAN FABRICS CORPORATION,<br><br>Defendants. | C.A. NO. 04-10439 RCL |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
LOCAL RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS**

Defendants Main Street Textiles, L.P. ("Main Street"), Joan Fabrics Services, LLC and Joan Fabrics Corporation (the "Defendants") hereby respond to the Plaintiffs' Local Rule 56.1 Statement of Uncontroverted Facts filed in connection with their Motion for Summary Judgment as follows:[1]

1. The Defendants do not dispute the facts contained in Paragraph 1.

2. The Defendants do not dispute the facts contained in Paragraph 2.

3. The Defendants do not dispute the facts contained in Paragraph 3.

4. The Defendants dispute that it became apparent to management in the Summer of 2003 that Main Street's Fall River facility would have to close. On or about October 10, 2003,

---

[1] The Plaintiffs filed their Local Rule 56.1 Statement of Uncontroverted Facts on September 15, 2006, approximately two and one-half weeks after they filed their Motion for Summary Judgment, and three days after the Defendants filed their Opposition to the Plaintiffs' Motion for Summary Judgment. Because the Plaintiffs failed to file a concise statement of the material facts of record as to which they contend that there exists no genuine issue to be tried simultaneously with their Motion for Summary Judgment as required by Local Rule 56.1, the Plaintiffs' Local Rule 56.1 Statement filed on September 15, 2006 should be stricken for failure to comply with the Local Rules, and the Plaintiffs' Motion for Summary Judgment should be denied. See D. Mass. L.R. 56.1.

1

Main Street determined that it would likely have to close the plant at some point. See Deposition of Edward DiPetrillo ("DiPetrillo Dep.") at 55:16-23[2] (Company principals decided to close the plant "maybe a week before [the October 17, 2003 WARN Notice] at the most"); see also id. at 35:4-7, 35:17-24; Deposition of Penny Richards ("Richards Dep.") at 24:3-21[3]; Cf. Deposition of Lou-Ann Laporte ("Laporte Dep.") at 13:5-13 (Main Street's Human Resources Manager testified that she was not informed of the proposed shut down until the October 17, 2003 WARN notice was actually posted).[4] The Defendants do not dispute that in the Summer of 2003, representatives of Main Street met with Main Street's then attorney. The substance of those conversations are protected by the attorney-client privilege, and no response is required thereto. Further answering, Mr. Martin testified that senior management of Main Street met two or three times in the Summer and Fall of 2003 to discuss WARN related issues. See generally Plaintiffs' Exhibit 7, Martin Dep. at 20-24. Ms. Laporte testified that she does not recall the substance of the meetings that occurred in the Summer and Fall of 2003 (pre-October 17, 2003), including any discussions concerning WARN related issues. See Plaintiffs' Exhibit 7, Laporte Dep. at 50:19-52:6, 54:10-11.

5.  The Defendants deny that they began a series of mass layoffs that commenced on August 26, 2003 and that concluded with the plant closing on April 30, 2004. Rather, Main Street initially attempted to address its declining sales by shift reductions and temporary layoffs.

---

[2] The relevant excerpts of the DiPetrillo Dep. are attached to the Defendants' Local Rule 56.1 Statement filed on July 13, 2006 as Exhibit 3. All other numbered exhibits are likewise attached to the Defendants' Local Rule 56.1 Statement (the "LR 56.1 Statement") and are referred to as "Ex. ___".

[3] The relevant excerpts of the Richards Dep. are attached to the LR 56.1 Statement as Ex. 1.

[4] The relevant excerpts from the Laporte Dep. are attached to the LR 56.1 Statement as Ex. 6.

See Defendant Main Street, L.P.'s Response to Plaintiffs' Interrogatories[5]; LR 56.1 Statement Ex. 3 at 43:9-44:8; LR 56.1 Statement Ex. 1 at 18:18-20. By letter dated October 17, 2003 (the "WARN Notice"), Main Street notified its active employees (and inadvertently some former employees who were recently laid off) that it intended to close its Fall River plant permanently by April 30, 2004. See WARN Notice, a copy of which is attached to the LR 56.1 Statement as Ex. 7. As contemplated by the WARN Notice, and prior to the plant closing on April 30, 2004, Main Street began permanently laying off groups of employees after the October 17, 2003 notice. See LR 56.1 Statement Ex. 2 at Ex. C. The only "mass layoff" that occurred for purposes of the WARN Act took place between November 6, 2003 and December 5, 2003. See LR 56.1 Statement Ex. 2 at Ex. C; LR 56.1 Statement Ex. 4 at ¶ 2; 29 U.S.C. § 2101(a)(3).

6.      The Defendants dispute that as of August 25, 2003, the "Defendant" employed 356 employees. As of August 25, 2003, Main Street employed 358 employees. See Plaintiffs' Exhibit 2. The Defendants do not dispute that from August 25, 2003 through August 30, 2003, Main Street laid off two employees and that, as of August 30, 2003, Main Street employed 356 employees. The Defendants dispute that August 26, 2003 through November 26, 2003 constitutes a 90 day period. Rather, August 26, 2003 through November 26, 2003 includes 93 days. The Defendants do not dispute that Main Street laid off, in a staggered series of layoffs, more than 50 employees between August 26, 2003 through November 26, 2003. The remainder of the allegations contained in Paragraph 6 (and Footnote 2 thereto) are not facts, but rather conclusions of law to which no response is required. To the extent any response is required, the Defendants state that the layoffs that took place between August 26, 2003 and November 26, 2003 do not trigger the WARN Act because the aggregation rules set forth in 20 U.S.C.

---

[5] Defendant Main Street Textiles L.P.'s Response to Plaintiffs' Interrogatories is attached to the LR 56.1 Statement as Ex. 2.

§ 2102(d) do not apply to the facts of this case where Main Street's layoffs between November 6, 2003 and December 5, 2003 satisfied the requirements of 29 U.S.C. § 2101(a)(3) and constituted a mass layoff under the Act. See 29 U.S.C. § 2102(d). The Defendants further state that the "snapshot date" for the layoffs that took place between August 26, 2003 and November 26, 2003 referred to in Footnote 2 is not August 25, 2003, because the so-called "snapshot date" is 60 days prior to the first layoff in a mass layoff, see 20 CFR § 639.5(a)(2), which took place in November and December 2003.

7. The Defendants dispute that the "Defendant" failed to compensate the 31 former employees referred to in Paragraph 7 and listed in Footnote 3, and dispute further that the 31 former employees referred to in Paragraph 7 and listed in Footnote 3 are plaintiffs in this lawsuit. The Defendants admit that Main Street did not provide the 31 former employees listed in Paragraph 7 with WARN related compensation because Main Street was not required to provide them with WARN related compensation. Further answering, the Defendants state that, although the Plaintiffs purport to bring this lawsuit as a class action, they have not moved to certify the class to include the 31 former employees referred to in Paragraph 7 and listed in Footnote 3.

8. The Defendants do not dispute the facts contained in Paragraph 8.

9. The Defendants do not dispute that Main Street compensated those employees laid off between November 6, 2003 and December 5, 2003 in compliance with the WARN Act. The Defendants dispute that the "Defendant" compensated the employees laid off between November 6, 2003 and December 5, 2003, because the term "Defendant" has not been defined by the Plaintiffs. In addition, the Defendants dispute that November 6, 2003 through December 5, 2003 is a 60 day time period.

10. The Defendants do not dispute the facts contained in Paragraph 10.

4

11. The Defendants dispute the facts contained in Paragraph 11. Main Street laid off 11 employees from August 25, 2003 through September 23, 2003. See Plaintiffs' Exhibit 4.

12. The Defendants dispute the facts contained in Paragraph 12. Main Street initially laid off 18 employees from September 24, 2003 through October 23, 2003, but recalled 5 of those employees during that same time period. See Plaintiffs' Exhibit 4.

13. The Defendants dispute the facts contained in Paragraph 13. Main Street laid off 108 employees from October 24, 2003 through November 22, 2003. See Plaintiffs' Exhibit 4. Of that number, 103 employees were laid off on November 6, 2003 and November 7, 2003. See id.

14. The Defendants dispute the facts contained in Paragraph 14. Main Street permanently laid off 132 employees from August 25, 2003 through November 22, 2003. See Plaintiffs' Exhibit 4. The remainder of the allegations contained in Paragraph 14 are not facts, but rather conclusions of law to which no response is required. To the extent any response is required, the Defendants dispute that the layoffs that took place between August 26, 2003 and November 26, 2003 were sufficient to meet the definition of a mass layoff under the WARN Act because the aggregation rules set forth in 20 U.S.C. § 2102(d) do not apply to the facts of this case where Main Street's layoffs between November 6, 2003 and December 5, 2003 satisfied the requirements of 29 U.S.C. § 2101(a)(3) and constituted a mass layoff under the Act. See 29 U.S.C. § 2102(d).

15. The Defendants do not dispute that Ms. Camara was laid off on September 28, 2003, and that Ms. Manchester was laid off on October 3, 2003. See LR 56.1 Statement Ex. 2 at Ex. B.

16. The Defendants do not dispute the facts contained in Paragraph 16.

17.     The Defendants do not dispute the facts contained in Paragraph 17.

18.     The Defendants do not dispute the facts contained in Paragraph 18.

19.     The Defendants dispute that Production Hourly Associates were eligible for vacation pay during those work stoppages.  Rather, the Defendants state that Production Hourly Associates were eligible for paid time off during those work stoppages, referred to as "vacation pay" under the Company's policy, so long as they were on the active payroll at the time of the stoppage, which was referred to as "vacation time".  See Production Hourly Vacation Pay Policy, a copy of which is attached to the LR 56.1 Statement as Ex. 11 ("An Associate must be employed at vacation time or on an approved medical leave of absence to receive vacation pay, or unless they return prior to their next scheduled shift.");  LR 56.1 Statement Ex. 3 at 92:21-93:3, 96:7-10; LR 56.1 Statement Ex. 6 at 57:2-7, 59:5-13; LR 56.1 Statement Ex. 1 at 63:20-64:2.  Main Street's policy also states that "[n]ew associates must have worked prior to the last week in May to be eligible for vacation pay during the July 4th vacation and prior to the last week in November to be eligible for vacation pay during the Holiday vacation [*i.e.*, the last week of December between Christmas and New Year's]." LR 56.1 Statement Ex. 11; LR 56.1 Statement Ex. 3 at 93:4-12, 94:4-8.  Employees who were laid off prior to the work stoppages and not recalled by December 31 of the year of layoff were not eligible for vacation pay.  See Layoff Policy, a copy of which is attached to the LR 56.1 Statement as Ex. 5.

20.     The Defendants dispute the facts in Paragraph 20.  Pursuant to the express terms of the written policy, vacation time did not accrue.  See LR 56.1 Statement Ex. 11; see also LR 56.1 Statement Ex. 6 at 60:13-61:21; LR 56.1 Statement Ex. 1 at 61:4-14.  Rather, Main Street computed the amount of any particular employee's vacation pay based upon the employee's seniority and total earnings for the preceding six months.  See LR 56.1 Statement Ex. 11.

6

21.     The Defendants dispute the characterization of the Attorney General's Advisory in Paragraph 21. The Advisory referred to in Paragraph 21 was not exclusively about accrued vacation, but rather concerned vacation policies in general. See Plaintiffs' Exhibit 9.

22.     The Defendants do not dispute that Main Street computed the amount of any particular employee's vacation pay during the work stoppage based upon the employee's seniority and total earnings for the preceding six months. The Defendants dispute that this method of computation amounted to an accrual based vacation policy, or that Main Street violated M.G.L. c. 149, § 148. See LR 56.1 Statement Ex. 11; LR 56.1 Statement Ex. 6 at 60:13-61:21; LR 56.1 Statement Ex. 1 at 61:4-14.

23.     The Defendants do not dispute that an employee with up to three years of service who was employed as of the date of the work stoppage would be entitled to "vacation pay" during the work stoppage equal to 2% of his or her total earnings for the preceding six months. See LR 56.1 Statement Ex. 11.

24.     The Defendants do not dispute that an employee with greater than three years, but less than five years, of service who was employed as of the date of the work stoppage would be entitled to "vacation pay" during the work stoppage equal to 3% of his or her total earnings for the preceding six months. See LR 56.1 Statement Ex. 11.

25.     The Defendants do not dispute the facts contained in Paragraph 25.

26.     The Defendants dispute the facts contained in Paragraph 26. The April 10, 2006 letter from the Attorney General's Office is dated more than two years after the Plaintiffs filed their original Complaint and fails to identify the specific individuals on whose behalf counsel for the Plaintiffs is authorized to bring suit. Moreover, the supporting materials attached to the letter

7

do not indicate that the Plaintiffs filed a complaint against Main Street with the Attorney General's Office.

    27.    The Defendants do not dispute the facts contained in Paragraph 27.

        MAIN STREET TEXTILES, L.P.
        JOAN FABRICS SERVICES, LLC
        JOAN FABRICS CORPORATION

        By their attorneys,

        /s/ Neil V. McKittrick
        Neil V. McKittrick (BBO# 551386)
        Elizabeth L. Schnairsohn (BBO# 658532)
        GOULSTON & STORRS
        A Professional Corporation
        400 Atlantic Avenue
        Boston, MA  02210
        617-482-1776
        nmkittrick@goulstonstorrs.com

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that all counsel of record are so registered.

        /s/ Neil V. McKittrick
        Neil V. McKittrick

Dated:  September 21, 2006